UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| MICHAEL TERRELL, | : | Case No. 3:16-cv-484 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Michael Terrell brings this case challenging the Social Security Administration's denial of his application for Supplemental Security Income. He applied for benefits on August 19, 2013, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" beginning on October 20, 2010. He was fifty years old when he filed his application and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. § 416.963(d). He has a limited education. *See* 20 C.F.R. § 416.964(b)(3).

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that he has arthritis and pain in both hips. (Doc. #6, *PageID* #120). He describes the pain as "aching." *Id.* at 123. On rainy days, on a scale of one to ten, the pain in his right hip is at ten. *Id.* His left hip is "about an eight." *Id.* at 124-25. He gets injections in both every ninety days to help with the pain. *Id.* at 121. They help but only temporarily. *Id.* at 123. When his pain is really bad, he takes Tramadol. *Id.* at 125. He needs hip replacements. *Id.* at 124. His hip problems began in 1979 when he was in a car accident. *Id.* at 119, 121.

Plaintiff has hallux valgus—"big toe joint arthritis"—in his right foot. *Id.* at 126. He also has pain in his right ankle. *Id.* at 128. When he injured it, he needed surgery. *Id.* at 129. But, in 2013, because he was still having pain, his doctor removed the hardware. *Id.* at 128. Unfortunately, arthritis causes his pain, not the hardware, and as a result, he still experiences pain. *Id*. His pain—on a scale from one to ten—is six or seven. *Id.* at

129. He has had problems with instability because his ankle is weak. *Id.* It also swells a lot. *Id.*

Plaintiff has pain in his foot. *Id.* at 130. He rated his foot pain at seven or eight. *Id.* at 131. He also has problems with his hands. *Id.* at 140. His fingers "lock up." *Id.* His doctor calls it "trigger finger." *Id.* at 141. Plaintiff has pain in both elbows from arthritis. *Id.* He also has hemorrhoids that have required surgery in the past. *Id.* at 144.

Plaintiff struggles with anxiety, depression, and bipolar disorder. *Id.* at 132. He explained his symptoms of bipolar disorder: "sometimes I get frustrated for no reason at all …." *Id.* at 133. He used to get into a lot of arguments. *Id.* But, he believes his medication works, and he does not argue as much anymore. *Id.*

Plaintiff estimated that he can walk for about a half a block with a cane. *Id.* at 131. He can stand in one spot for ten to fifteen minutes and sit for fifteen minutes without moving. *Id.* at 132. He estimated that he can lift ten to twelve pounds before his hands "lock up." *Id.*

Plaintiff testified that he is unable to do a full-time job because all jobs require dependability, and he cannot be: "I can't tell the people at the job, well it's raining today. I can't … make it. … Nobody wants to hear it, not an employer. …" *Id.* at 138-39. He explained, "[A]nybody … would be really fooling themselves, if they think that … it's employers who allow certain things … to go on in their jobs. They don't do that. If you can't do what you're supposed to do, or what they require you to do, then you're not going to be there." *Id.* at 139.

Plaintiff lives in an apartment by himself. *Id.* at 118. He does not have a driver's license. *Id.* at 119. He previously had a license, but in 1979, he was in a bad car accident and his friend died in the crash. *Id.* He was driving at the time and never wanted to drive again. *Id.* He usually sleeps for four or five hours per night. *Id.* at 136. When his medication begins "kicking in," he sometimes naps during the day. *Id.* at 136-37. Plaintiff is able to take care of his personal needs. *Id.* at 137. He does not clean very often and his place is a "mess." *Id.* During the day, he usually watches television, reads "a little bit," and talks on the phone. *Id.* at 138.

Plaintiff has an eleventh-grade education. *Id.* at 119. His ability to read and write is "[n]ot that good[.]" *Id.* He is able to read, for example, a newspaper article. *Id.* at 120. Plaintiff took some classes to get his GED, but he was not able to concentrate in class because he was uncomfortable and had to move around. *Id.* at 134-35.

### B. Medical Opinions

#### i. Damian M. Danopulos, M.D.

Dr. Danopulos examined Plaintiff on September 23, 2013. His "objective findings were 1) right hip and right femur post surgery arthralgias, which could not be documented on this examination, 2) right ankle arthralgias with current normal but painful right ankle motions[,] 3) left hand, left wrist and forearm neuralgias, which could not be documented on this examination, 4) right hand neuralgias, which could not be documented on this examination, 5) history of GERD, which was diagnosed clinically taking Carafate, which helps and 6) history of depression and anxiety, which has been followed by Daymont." *Id.* at 492. Dr. Danopulos' " clinical impression was that he can

do any work related activities without any problem and his grip strength was normal so he can lift 25 pounds on occasions very easily." *Id.*

### ii.     Karla Voyten, Ph.D., & Roseann Umana, Ph.D.

On September 30, 2013, Dr. Voyten reviewed Plaintiff's records. *Id.* at 196-210. She found that Plaintiff has three severe impairments: dysfunction of major joints; osteoarthritis and allied disorders; and affective disorders. *Id.* at 202. She opined Plaintiff had a mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no repeated episodes of decompensation. *Id.* at 203. Dr. Voyten's mental residual functional capacity (MRFC) "is an adoption of the ALJ MRFC dated 10/19/2010. The MRFC is being adopted under AR [(Acquiescence Ruling)] 98–4 (Drummond Ruling)." *Id.* at 207.

Dr. Umana reviewed Plaintiff's records on February 18, 2014. *Id.* at 212-23. She affirmed Dr. Voyten's assessment and also adopted the prior ALJ's MRFC. *Id.*

### iii.     Michael Lehv, M.D., & Gary Hinzman, M.D.

Dr. Lehv reviewed Plaintiff's records on November 18, 2013. *Id.* at 196-210. He opined Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. *Id.* at 205. He could stand and/or walk for six hours in an eight-hour workday and sit for a total six hours. *Id.* He can frequently climb ramps/stairs, stoop, kneel, crouch, and crawl and never climb ladders, ropes, and scaffolds. *Id.* He should avoid all exposure to hazards such as machinery and heights. *Id.* at 206. Dr. Lehv concluded that Plaintiff is not disabled. *Id.* at 209.

5

On February 27, 2014, Dr. Hinzman reviewed Plaintiff's records. *Id.* at 212-23. Although he agreed with Dr. Lehv's conclusion that Plaintiff is not disabled, he adopted the prior "ALJ decision of 10/19/2010 … according to the Drummond decision [and] AR 98-4." *Id.* at 220. He then repeated the prior ALJ's residual functional capacity assessment:

> The claimant has the residual functional capacity to perform medium work … except that the claimant is restricted to lifting 30 pounds occasionally and 10 pounds frequently. Furthermore he cannot be exposed to heights, or climb ladders, ropes, scaffolds, ramps or stairs. He cannot use foot pedals on the right. He cannot perform forceful gripping with his left upper extremity. He is further limited to low stress jobs, which is defined for [this] claimant as jobs that do not involve direct dealing with the public, over the shoulder supervision, or production quotas. The claimant is further restricted to frequent handling and fingering with the right upper extremity.

*Id.* at 220; *see id.* at 180.

### III. Standard of Review

The Social Security Administration provides Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. He reached the following main conclusions:

> Step 1: Plaintiff has not engaged in substantial gainful employment since August 19, 2013.
>
> Step 2: He has the severe impairments of osteoarthritis of the hips and right ankle, depression, and an anxiety disorder.
>
> Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4: His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light level work subject to the following limitations: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no use of the lower extremities for pushing, pulling, or operating foot controls; (5) no concentrated exposure to wet or cold environments; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with co-workers and supervisors; (8) no public contact; (9) no fast paced production work or jobs involving strict production quotas; and (10) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work routine from one day to the next[.]"
>
> Step 4: He is unable to perform any of his past relevant work.

8

>       Step 5:    He could perform a significant number of jobs that exist in the
>                  national economy.

(Doc. #6, *PageID* #s 97-108). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 108.

## V.     Discussion

Plaintiff contends that the ALJ erred at Steps Four and Five. The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A.     Steps Four & Five

Plaintiff asserts, "the ALJ erred in according the opinions of examiner Dr. Danopulos and State Agency non-examiner Dr. Lehv 'great weight' despite that they did not review most of the medical evidence in the record—evidence which is inconsistent with their incomplete opinions." (Doc. #7, *PageID* #1015). Plaintiff's argument lacks merit. "[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009). "In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Id.*

ALJ Kenyon's decision indicates that he subjected Dr. Danopulos' and Dr. Lehv's opinions to scrutiny. He did not accept them at face value. Instead, he added many restrictions that they did not suggest. For example, he "added the restriction to no concentrated exposure to wet or cold environments as [Plaintiff] testified the weather

9

affect his hips and ankle osteoarthritis." (Doc. #6, *PageID* #105). Dr. Lehv opined Plaintiff could frequently climb ramps/stairs, stoop, kneel, crouch, and crawl. *Id.* The ALJ limited these activities to occasionally. *Id.* at 101, 205. Further, to account for Plaintiff's limitations in his lower extremities, the ALJ also added, "no use of the lower extremities for pushing pulling, or operating foot controls[.]" *Id.* at 101. The ALJ also discussed the evidence acquired after Dr. Lehv's review and Dr. Danopulos' evaluation.

Plaintiff points to a few pieces of evidence to show that the ALJ "impermissibly picked and chose from the record and he failed to incorporate all of Terrell's limitations into his RFC determination." (Doc. #7, *PageID* #1016). He points to, for instance, that the ALJ acknowledged that Dr. Bishop's notes revealed a good recovery but the ALJ did not "adequately confront subsequent evidence … that shows [Plaintiff] continued to experience pain and documented clinical signs and symptoms." *Id.* at 1016-17. But substantial evidence supports the ALJ's assessment of a good recovery from ankle surgery. On October 9 and 17, 2013, Dr. Bishop noted that Plaintiff was "doing well." (Doc. #6, *PageID* #s 781, 783). Plaintiff reported in November 2013 that he had some pain in his right ankle after he tried to run but was "doing well." *Id.* at 780. On December 13, 2013, Dr. Bishop noted that Plaintiff twisted his ankle and had some resulting pain. *Id.* at 779. However, his pain decreased and "now feels like he is able to do everything without any discomfort. *Id.* Plaintiff reported in February 2014 that "he is able to continue his normal activities without any discomfort. *Id.* at 778.

Plaintiff asserts, "Dr. Bishop advised that [Plaintiff] would benefit from surgical correction, which ALJ Kenyon merely mentioned in passing without explaining why this

evidence does not require more significant restrictions than found by the ALJ, particularly standing and walking limitations." (Doc. #7, *PageID* #1017). Indeed, in October 2014, Plaintiff reported pain in his right foot at the big toe joint and Dr. Bishop diagnosed hallux limitus. (Doc. #6, *PageID* #775). A month later, Dr. Bishop diagnosed hallux valgus. *Id.* at 773. Dr. Bishop noted, "I explained to the patient that he would benefit from surgical correction …." *Id.* But, as the ALJ acknowledges and Plaintiff overlooks, he also noted, "I believe the patient should quit smoking prior to this." *Id.* In March 2015, Dr. Bishop noted that he "again encouraged [Plaintiff] to quit smoking." *Id.* at 772. Dr. Bishop did not opine that Plaintiff's ability to stand or walk was limited by these conditions. And, although Dr. Bishop suggested surgery, he did not opine Plaintiff would not be able to stand or walk without it. Plaintiff further overlooks that the ALJ also restricted Plaintiff to "no use of the lower extremities for pushing pulling, or operating foot controls[.]" *Id.* at 101.

Accordingly, substantial evidence supports the ALJ's decision.

**B.    Sentence Six Remand**

A court can "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658,

> 110 L.Ed.2d 563 (1990). Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam). … [T]he burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

Plaintiff asserts the new evidence he provided "shows that [Plaintiff] ambulated with an antalgic gait and exhibited hip pain that was 'aggravated by daily activities, squatting and walking' and relieved by injections and rest. On examination, he had right and left hip and groin pain and positive hip impingement along with Stinchfield." (Doc. #7, *PageID* #1017). He contends, "This evidence is inconsistent with the ALJ's RFC determination and Dr. Danopulos' opinion and, thus, remand is appropriate for a case review by a qualified medical expert." *Id.*

Plaintiff's argument lacks merit. Treatment notes from before the ALJ's decision revealed positive hip impingement and Stinchfield long before Plaintiff's new evidence. For example, Dr. Bauman noted in October 2013 that Plaintiff had positive right-hip impingement sign. (Doc. #6, *PageID* #781). In March and July 2014, he had positive Stinchfield. *Id.* at 777. Plaintiff had a positive left-hip impingement sign in April 2015. *Id.* at 771. Further, Dr. Bishop's note—that Plaintiff's "symptoms are aggravated by daily activities, squatting, and walking"—does not reasonably suggest that Plaintiff is

unable to do any work-related activities. Accordingly, Plaintiff did not establish that there was "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711.

Plaintiff, moreover, has provided "no reasonable justification for [his] failure to acquire and present the evidence for inclusion in the hearing before the ALJ[,]" and accordingly, has not shown good cause. *Foster*, 279 F.3d at 357.

Accordingly, Plaintiff is not entitled to a sentence-six remand.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision be affirmed; and
2. The case be terminated on the Court's docket.

February 1, 2018

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).